1

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

2

3

PHYLLIS D. EVANS,                                    No.  C 07-03794 SBA

4

          Plaintiff,                                 **ORDER**

5

     v.                                              [Docket No. 13]

6

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

7

8

          Defendant.

9

10                              **REQUEST BEFORE THE COURT**

11          Before the Court is plaintiff Phyllis D. Evans' Motion for Summary Judgment and/or

12   Remand (the "Motion") [Docket No. 13], defendant Commissioner of the Social Security

13   Administration's Notice, Motion and Memorandum in Support of Cross-Motion for Summary

14   Judgment and In Opposition to Plaintiff's Motion for Summary Judgment (the "Cross-Motion")

15   [Docket No. 16], and Evans' Reply and Opposition to Defendant's Cross-Motion for Summary

16   Judgment (the "Reply") [Docket No. 21].  Evans appeals defendant's decision that she is neither

17   disabled nor eligible for supplemental security disability income benefits under Subchapter XVI of

18   the Social Security Act, 42 U.S.C. § 1381 *et seq.*

19          As discussed below, the Court finds there is substantial evidence to support defendant's

20   finding that only Evans' right hand is impaired, and not both.  The Court finds, however:

21   (1) defendant improperly discredited Evans' testimony as to the intensity, persistence, and limiting

22   effects of her symptoms without specific reasons; (2) defendant improperly discredited the treating

23   source opinion of Dr. Bean without specific reasons; and (3) there is not substantial evidence to

24   support the residual functional capacity ("RFC") determined by defendant.

25          Accordingly, the Court GRANTS in part and DENIES in part plaintiff's Motion, GRANTS

26   in part and DENIES in part the Cross-Motion, REVERSES defendant's decision regarding whether

27   ///

28   ///

Evans is eligible for supplemental security income benefits, and REMANDS this matter to defendant for further determinations and findings consistent with this Order, under 20 C.F.R. § 416.920(a)(4).[1]

## BACKGROUND

**I.      Evans' Education and Work Experience from 1953 through 2002**

Evans was born on October 16, 1953.  Docket No. 10 at 61 (Admin. R. ("AR")).  She completed the eleventh grade in 1971, her highest level of education.  AR at 89.  Her work history is limited: from about 1989 through 1991, she worked as a gas station attendant/cashier.  AR at 19, 84, 95-97.  Evans did not work from 1991 to 2001.  AR at 95.  In 2001, she worked part-time as a bus washer for Advance Charter until 2002, when she left citing the now-at-issue back pain and hand numbness.  AR at 19, 314.

**II.     Evans' Medical and Procedural History from 2001 through 2005**

**A.      Copper Tower Family Medical Center, 2001 through 2003**

From January 2001 through April 2004, Evans was treated at the Copper Tower Family Medical Center ("Copper Tower") in Cloverdale, California.  AR at 173-82 (Ex. "6F").  In February 2001, an x-ray revealed slight straightening of the sacrococcygeal angle, but within normal limits. AR at 198.  No fractures or other abnormalities were revealed.  *Id.*  The same x-ray also revealed moderate narrowing of the L5-S1 disk space consistent with degenerative disk disease, mild superior endplate compression of vertebral body L1, and narrowing of the T12-L1 disk space.  AR at 19, 198.  An April 2001 x-ray at Healdsburg General Hospital ("Healdsburg") in Healdsburg, California revealed normal abdominal sonography, with respect to Evans' history of Hepatitis C.  AR at 19, 197.

Examination Notes dated August 2001 focus on the L5-S1 spinal joint per Evans' complaint of back pain.  AR at 182.  Subsequent treatments at Copper Tower were for Evans' complaints of depression; polysubstance abuse, including marijuana, methamphetamines, and alcohol; hand numbness; back pain; and hepatitis.  AR at 19, 173-97.  A May 2002 note indicates she was compliant with prescribed treatment except for occasional marijuana use, but no alcohol or other

---

[1]      All regulatory citations herein are to the 2008 Code of Federal Regulations.

drugs for eight months.  AR at 19, 190.  In July 2002, Evans was prescribed Prozac for depression, and referred to psychotherapist Barrie Ann Mason.  AR at 191.  In September 2002, treatment for her hepatitis C was deferred, as she was still using alcohol and marijuana and had to be clean and sober for six months before treatment.  AR at 19, 186.  This same month, Evans' Prozac prescription was refilled.  AR at 19, 186 (Ex. "6F").

**B.      Evans applies for SSI disability, 2003**

On August 4, 2003, Evans applied for Supplemental Security Income ("SSI") with the Social Security Administration (the "SSA").  AR at 62-64.  Evans alleges she became disabled as of August 13, 2002, due to back problems, a broken tail bone, and hepatitis C.  AR at 27, 62, 311-312.

In a Pain Questionnaire dated August 2003, Evans writes she suffers from lower-back pain, depression, weakness, hip pain, and leg pain.  AR at 103.  She says pain may be brought on by sitting, standing, or walking longer than 15 to 20 minutes.  *Id.*  She says her pain can last for three to four hours at a time, sometimes days, and rest does not relieve it.  *Id.*  She reports medications such as ibuprofen (800 ml.) can sometimes calm down the pain.  *Id.*

Due to her pain, Evans says she has to stop after 15 minutes of any activity.  AR at 105.  Also, she finds it difficult to vacuum.  *Id.*  She says she can walk a block, do light housekeeping chores and errands without assistance, but has her roommate drive her to do errands.  *Id.*  She says she can no longer "ride her bike, play baseball, or swim."  *Id.*

**C.      MDSI Physician Group - Obiamiwe Umeh, M.D., 2003**

In September 2003, Evans presented at the MDSI[2] Physician Group ("MDSI") in Santa Rosa, California at the SSA's request for a comprehensive internal medicine evaluation.  AR at 20, 146.  Evans' chief complaints were hepatitis C and low back pain.  AR at 146.  An MDSI report places her back pain diagnosis as stemming from a 1998 fall at home which injured her sacrum.  *Id.*  This report also states no x-rays were performed.  AR at 146.

On physical examination, motor strength was full in the upper and lower extremities, including handgrip bilaterally.  AR at 20, 147.  Diagnoses included chronic hepatitis C, clinically

---

[2]      The parties do not define this acronym.

3

asymptomatic, and low back pain, likely myofascial in nature without any neurological deficits.  AR at 20, 148.  Dr. Obiamiwe Umeh, a board-certified specialist in internal medicine, opined Evans could stand and walk six hours in an eight-hour workday, sit without restrictions, lift up to 20 pounds occasionally and 10 pounds frequently, secondary to fatigue and decreased ambulation.  AR at 20, 149.  No additional limitations were noted.  *Id.* (Ex. "1F").

### D.    Michael L. Venard, Ph.D., 2003

In November 2003, Evans presented to clinical psychologist Michael L. Venard, Ph.D.,  in Santa Rosa, California, at the SSA's request.  AR at 20, 158.  Again, Evans' primary complaints included back pain, hepatitis C, and depression.  *Id.*  Unlike her complaints to MDSI, Evans here complained of "achey" hands as well.  AR at 20, 146, 158.

Upon mental status examination and psychological test results, Venard reported Evans' long history of substance misuse for which she was currently receiving treatment and ongoing counseling.  AR at 20, 159.  Diagnoses included alcohol dependence and amphetamine dependence in sustained full remission by self-report, marijuana dependency, and a mildly severe recurrent major depressive disorder.  *Id.*  Venard diagnosed her overall symptom picture as mild, in terms of severity rating, with a Global Assessment of Functioning of 70.  AR at 20, 162.  Venard assessed Axis II borderline intellectual functioning, but found Evans only mildly limited in the ability to understand, remember, and carry out simple verbal instructions.  AR at 20, 162.  Her ability to respond appropriately to co-workers, supervisors, and the public did not appear significantly impaired.  AR at 20, 163.  Evans denied any history of difficulties getting along with others.  *Id.*  Venard's opinion was Evans would respond well to appropriate antidepressant medications.  *Id.* (Ex. "3F").

### E.    Procedural Developments with the SSA, 2004

On January 28, 2004, the SSA denied Evans' application for benefits.  AR at 27-31.   On or about April 2, 2004, Evans timely requested reconsideration, claiming her back condition had deteriorated and that she was in constant pain.  AR at 33.

### F.    MDSI Physician Group - Robert Wechsler, M.D., 2004

In June 2004, Evans again presented at MDSI, at the SSA's request.  AR at 20, 215.  Evans

again complained of back pain, but this time originated her symptoms to chronic wear and tear, as opposed to any specific injury, and dated her symptoms as three or four years old.  AR at 20, 215.  Evans here reported chiropractic treatment in the past, and complained of intermittent hand numbness.  *Id.*  Evans reported only some limitation doing household chores.  *Id.*

Diagnostic impression on independent examination included musculoskeletal back pain with no objective radicular deficits in the lower extremities and possibly mild right ulnar neuropathy.  AR at 20, 217.  Dr. Robert Wechsler, M.D., a board-eligible neurologist, opined Evans should be able to stand or walk for about six hours in an eight-hour workday, and noted no restrictions on sitting, lifting or carrying.  *Id.* (Ex. "7F").

**G.**     **UCSF Medical Center, 2004**

In June 2004, Evans presented at the University of California San Francisco Medical Center ("UCSF") in San Francisco, California, referred by Dr. Judy Widger of Copper Tower.  AR at 20, 218, 301-02.  Nerve conduction studies showed some abnormalities for "bilateral moderately severe, right greater than left, carpal tunnel syndrome."  *Id.*  Notes from a follow-up appointment in July 2004 indicate Evans had decreased range of motion in her back, especially with forward flexion and side-to-side motion secondary to the discomfort.  AR 282.  These same notes referred Evans to UCSF Orthopedic for carpal tunnel release surgery and prescribe carpal tunnel wrist splints, baclofen, Vicodin, and Celebrex.  *Id.*  Evans never picked up the splints.  *Id.*

**H.**     **MDSI Physician Group - Dr. Stefan Lampe, M.D., 2004**

In July 2004, Evans again presented at MDSI at the SSA's request, for another comprehensive psychiatric evaluation.  AR at 21, 237.  Dr. Stefan Lampe, M.D., a board-certified psychiatrist, opined Evans could relate and interact with supervisors and co-workers; understand, remember and carry out simple, as well as more technical instructions; deal with the public; maintain concentration and attention for two-hour increments; and withstand the stress and pressures of an eight-hour workday on an ongoing basis.  AR at 21, 239.  Her prognosis with treatment was good.  *Id.* (Ex. "12F").

**I.**     **Healdsburg, 2004**

In August 2004, Evans again presented on a referral at Healdsburg for x-rays.  AR at 297.  A

comparison of the same spinal region as in the 2001 visit reveals a healed L1 vertebral body fracture, and narrowing of the L5-S1 disk space consistent with degenerative disk disease.  *Id.* A concurrent osteoporosis screening x-ray revealed bone mineral density between normal and osteopenic levels, suggesting borderline increased risk of fracture.  AR at 300.

**J.      Further Procedural Developments with the SSA, 2004**

On August 17, 2004, the SSA affirmed its original denial of Evans' application for SSI disability.  AR at 36-41.  After this, Evans timely filed a Request for Hearing by an Administrative Law Judge ("ALJ") on August 27, 2004, AR at 42, which hearing was set for September 12, 2005, AR at 303-41.

**K.      Mendocino Radiology, 2004**

In October 2004, Evans presented for magnetic resonance imaging ("MRI") at Mendocino Radiology in Ukiah, California.  AR at 20, 260.  The results showed spinal stenosis at several levels and disc protrusion at L5-S1 on the left.  *Id.* (Ex. "14F").

**L.      Dr. Bean, Ph.D., and Barrie Ann Mason, M.A. M.F.T., 2005**

In January 2005, Evans presented for a psychological evaluation from Dr. L. Bean, Ph.D., and a Barrie Ann Mason, M.A. M.F.T.  AR at 21, 261.  These clinicians indicated Evans had marked limitations that would make it difficult for her to work secondary to her history of traumatic childhood and years of substance abuse.  AR at 21, 261-63 (Ex. "15F").  The basis for these opinions was psychotherapy counseling sessions at Copper Tower dating from April 2004 through February 2005.  AR at 21, 264-69 (Ex. "16F").  Elsewhere in the AR, Evans reports being in therapy with Mason at Copper Tower since 2003, but there are no progress notes to substantiate this.  AR at 21, 143-45 (Ex. "15E").

**M.      SSA Reports, 2004 through 2005**

In Daily Activities Questionnaires filed at the SSA's request, Evans details her daily activities as: taking her daughter to school and picking her up; helping her daughter with homework; shopping; cooking; and daily chores.  AR at 21, 76-81 (Ex. "2E"), 108 (Ex. "8E"), 116-21 (Ex. "10E").  An April 2004 SSA Third Party Function Report by a friend who "visits, plays cards, and goes to the movies" with Evans notes she can only do limited household work because of

6

extreme pain in her back and had difficulty holding down a job.  AR at 21, 67-75.  The friend further

notes that, though Evans does light sweeping, small loads of laundry, and tries to spend three or four

hours a day outside of the house, she does not socialize as well as she did in the past because of

stress, and is often upset by her limitations.  *Id.* (Ex. "1E").

Another Third Party Function Report completed by Evans' roommate and friend, in May

2004, notes she cooks and cleans as she can for her daughter and herself.  AR at 21, 122-30.  To this

friend's knowledge, Evans did not take medicine and did light household chores and yard work.  *Id.*

He notes sometimes Evans' hands hurt too much to drive and she has difficulty writing.  *Id.*

(Ex. "11E").

### N.    Evans' Administrative Hearing, 2005

On September 12, 2005, Evans had a hearing in front of ALJ David Mazzi.  AR at 303.  Dan

McCaskell, Ph.D., a non-attorney representative, appeared with Evans at her hearing.  AR at 33-34.

An impartial vocational expert also testified.  AR at 48-52, 303-41.  At her hearing, Evans testified

her back pain originated in 1991, or 1992, AR at 312, which pain caused her to leave her first job as

a gas station attendant/cashier, *id.*  She testified her back pain did not stem from any injury to her

knowledge, *id.*, and she described her back pain as brought on by lifting, sitting, or standing, AR at

310.  Evans said she could only sit for a few minutes before her back pain would start.  *Id.*

Evans testified she was not on pain medications at the time of the hearing and that she

regularly attended support group meetings after assisting her 11-year-old daughter to and from

school.  AR at 21, 317-18.

As to her hand condition, Evans testified in her job as a bus washer for Advanced Charter,

she could lift ten pounds until her symptoms forced her to leave the job in 2002.  AR at 312-14.  She

testified the job required her to bend over, lift, and use her hands a lot, and that back and hand pain

so negatively affected her that she could not keep up with the work and had to leave.  AR at 314-19.

She testified she did not recall being on any pain medication in 2002, and described her hand

problems as occasional tingling, numbness, and eventual pain in her right hand, brought on by

extended use.  AR at 314-15.  She testified her hand condition caused interruptions in her daily

activities occasionally, e.g., she had to stop mid-dishwashing once, and was unable to finish.  AR

1   at 316.

2          As to her mental state, Evans testified she was still seeing therapist Mason for the same

3   "mental condition[,]" which was still presenting problems for her in her daily life, and could be

4   aggravated by family problems and nerves.  AR at 316-317.  Evans testified such non-physical stress

5   would aggravate her physical conditions as well.  *Id.*

6          As to her physical abilities and activities, Evans testified she could lift up to ten pounds, AR

7   at 316, and perform household chores with assistance, AR at 318, but would have to "change

8   positions" after a few minutes, as her back pain would flare up, AR at 315.

9          Finally, as to her alcohol and drug history, Evans testified she had one slip in her sobriety in

10  the 12 months preceding her hearing.  AR at 339.  She said, "things . . . weren't really going right

11  and [she] was in a lot of pain."  *Id.*  She testified her "slip" involved methamphetamines, and lasted

12  only one night.  AR at 339-40.  She testified Dr. Bean, with whom she was still treating, was

13  unaware of this slip during her treatment.  AR at 340.

14         On or about October 17, 2006, the ALJ affirmed the SSA's denial of disability benefits.  AR

15  at 14.  On November 2, 2006, Evans, through her representative, requested the SSA's Appeals

16  Council to review the ALJ's decision.  AR at 11-12.  On April 13, 2007, the Council denied her

17  request.  AR at 6-8.

18         After filing and being granted a request for more time to file a civil action on July 24, 2007,

19  Evans timely sued the SSA for judicial review, under 42 U.S.C. §§ 405(g) and 1383(c)(3).  *See*

20  Docket No. 1.  On January 16, 2008, Evans filed her Motion for Summary Judgment and/or Remand

21  (the "Motion"), alleging four errors for review.  *See* Docket No. 13.  Specifically, she claimed the

22  ALJ: (1) improperly discounted the credibility of her symptom reporting; (2) improperly rejected

23  Dr. Bean's opinion of marked limitations causing inability to work; (3) improperly supported

24  findings about what the medical evidence showed regarding her "severe" impairments at step two of

25  the SSA's five-step disability analysis, and regarding her exertional RFC at step four of the analysis;

26  and (4) improperly found the SSA to have met its burden of proof at step five of the analysis

27  regarding the availability of jobs in the economy which she could perform.  Mot. at 3-10.

28  ///

1    ///

2                                    **LEGAL STANDARD**

3    **I.    Summary Judgment**

4            Summary judgment is appropriate if no genuine issue of material fact exists and the moving

5    party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*,

6    477 U.S. 317, 322-23 (1986).  The party moving for summary judgment must demonstrate that there

7    are no genuine issues of material fact.  *See Horphag v. Research Ltd. v. Garcia*, 475 F.3d 1029,

8    1035 (9th Cir. 2007).  An issue is "genuine" if the evidence is such that a reasonable jury could

9    return a verdict for the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

10   (1986); *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  An issue is "material" if

11   its resolution could affect the outcome of the action.  *Anderson*, 477 U.S. at 248; *Rivera*, 395 F.3d

12   at 1146.

13           In responding to a properly supported summary judgment motion, the non-movant cannot

14   merely rely on the pleadings, but must present specific and supported material facts, of significant

15   probative value, to preclude summary judgment.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith*

16   *Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th

17   Cir. 2002); *Fed. Trade Comm'n v. Gill*, 265 F.3d 944, 954 (9th Cir. 2001).  In determining whether a

18   genuine issue of material fact exists, the court views the evidence and draws inferences in the light

19   most favorable to the non-moving party.  *See Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of*

20   *the Navy*, 365 F.3d 827, 832 (9th Cir. 2004); *Hernandez v. Hughes Missile Sys. Co.*, 362 F.3d 564,

21   568 (9th Cir. 2004).

22           These same standards apply when parties file cross-motions for summary judgment.  *See*

23   *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001); *ACLU of N.M. v.*

24   *Santillanes*, 506 F. Supp. 2d 598, 624 (D.N.M. 2007).

25   **II.    Standard of Review**

26           The "substantial evidence" standard governs a district court's review of a final decision made

27   by the Commissioner of the SSA.  As 42 U.S.C. § 405(g) states:

28                   Any individual, after any final decision of the Commissioner of Social

                                              9

Security made after a hearing to which he was a party. . . may obtain a review of such decision by a civil action. . .  As part of the Commissioner's answer the Commissioner of Social Security shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner of Social Security as to any fact, *if supported by substantial evidence,* shall be conclusive . . . .

42 U.S.C. § 405(g) (emphasis added); *Udd v. Massanari*, 245 F.3d 1096, 1100 (9th Cir. 2001); *Evans v. Chater*, 110 F.3d 1480, 1483 (9th Cir. 1997).  When the Appeals Council declines to review an ALJ's decision, it stands as the Commissioner's final decision.  *Bass v. Social Sec. Admin.*, 872 F.2d 832, 832 (9th Cir. 1989).

A court may reverse an ALJ if his or her findings "are based on legal error or are not supported by substantial evidence."  *McCartey v. Massanari*, 298 F.3d 1072, 1075 (9th Cir. 2002). "Substantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Evans*, 110 F.2d at 1483 (quoting *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)).  "Substantial evidence is 'more than a mere scintilla,' but 'less than a preponderance.' "  *Evans*, 110 F.2d at 1483 (quoting *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990) (citations omitted)).  "If the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision [a court] must affirm."  *McCartey*, 298 F.3d at 1075.

### III.    The Five-Step Disability Inquiry

To establish a claimant's eligibility for disability benefits under the Social Security Act, it must be shown that:   (a) the claimant suffers from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months; and (b) the impairment renders the claimant incapable of performing

the work that the claimant previously performed and incapable of performing any

other substantial gainful employment that exists in the national economy.  *See* 42

U.S.C. § 423(d)(2)(A).   If a claimant meets both requirements, he or she is

"disabled."

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *see* 42 U.S.C. §§ 416(i), 423(d), 1382c(3)(A).

"The SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled [within the meaning of the Social Security Act].   20 C.F.R. § 416.920.  The claimant has the burden of proof for steps one through four, and the Commissioner has the burden of proof for step five." *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).  The five steps of the inquiry encompass establishing whether:

(1)     The claimant is presently working in a substantially gainful activity.  If so, then the claimant is not disabled within the meaning of the Social Security Act.  *See* 20 C.F.R. § 416.920(b); *see Bustamante*, 262 F.3d at 954.

(2)     The claimant's has a severe impairment.  If not, then the claimant is not disabled.  *See* 20 C.F.R. § 416.920(b); *see Bustamante*, 262 F.3d at 954.

(3)     The impairment meets or equals one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1.  If so, then the claimant is disabled.  *See* 20 C.F.R. § 416.920(d); *see Bustamante*, 262 F.3d at 954.

(4)     The claimant is able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  *See* 20 C.F.R. § 416.920(e); *see Bustamante*, 262 F.3d at 954.

(5)     The claimant is able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. § 416.920(f); *see Bustamante*, 262 F.3d at 954.

///

///

///

///

///

///

11

///

# ANALYSIS

For the following reasons, the Court REMANDS this matter to the SSA for a redetermination of Evans' residual functional capacity.[3]

**I.     The ALJ properly found Evans had only a severe right-hand impairment, rather than severe bilateral impairment.**

Evans contests the ALJ's finding that she had "a right hand impairment" as opposed to bilateral carpal tunnel syndrome. Mot. at 8. Evans does not oppose the ALJ's finding that she had other severe impairments. Specifically, Evans contends the ALJ did not have substantial evidence upon which to base his decision that her hand impairment was confined to her right hand. *Id.* For the following reasons the Court disagrees.

**A.     Legal Standard**

In determining whether a claimant is disabled, the SSA considers the medical severity of his or her impairments. 20 C.F.R. § 416.920(a)(4)(ii). If a claimant does not have a severe medically determinable physical or mental impairment that meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that is severe and meets the duration requirement, the SSA will find he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). The duration requirement is twelve continuous months past and/or future, unless the impairment is expected to result in death. *Id.* § 416.909.

A severe impairment is "any impairment or combination of impairments which significantly limits [a person's] physical or mental ability to do basic work activities. . ." *Id.* § 416.920(c). "Basic work activities" include, but are not limited to, "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "seeing, hearing, and speaking;" carrying out instructions; responding appropriately to co-workers, *et seq. Id.* § 416.920(b)(1).

In contrast, an impairment or combination of impairments is not severe "when medical

---

[3]     As neither party opposes the ALJ's findings with respect to steps one and three of the SSA's disability analysis, the Court does not address the ALJ's findings for those steps.

evidence establishes *only a slight abnormality* or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. . ." SSR 85-28 para. 12 (emphasis added); *see* 20 C.F.R. § 416.920(a). Claims of pain or symptoms alone, cannot support finding a severe impairment, which must be supported by a medical diagnosis. SSR 96-4p (symptoms); SSR 96-3p (pain). The SSA will not combine two or more unrelated impairments, to determine if a person meets the duration test. 20 C.F.R. § 416.922(a). If, however, a person has two or more impairments which overlap in time, the SSA will consider them in the aggregate in determining total severity, but only for those periods of time when they overlap. 20 C.F.R. § 416.922(b).[4]

**B.      Analysis**

The ALJ made his findings under 20 C.F.R. §§ 416.920(c), 416.921, and SSRs 85-28, 96-3p and -4p. AR at 18. He analyzed Evans' medical records from Copper Tower and UCSF, as well as Drs. Lampe, Umeh, Venard, Wechsler, Bean, and Ms. Mason. AR at 20-21. He also analyzed Evans' subjective symptom reporting, and the symptom reporting of her friends. *Id.* On this evidence, the ALJ found Evans had established five severe impairments: degenerative disc disease of the lumbar spine, a right hand impairment, depression, substance abuse in remission, and hepatitis C. AR at 19 heading 2. In regards to Evans' severe right hand impairment, the ALJ found Evans impaired as of June 2004, based largely on the results of her June 2004 UCSF nerve conduction studies, her subjective complaints, and third-party reports. AR at 20 para. 4.

Evans argues the ALJ's finding that her impairment was only severe in her right hand was inconsistent with the medical evidence, and was not supported by substantial evidence. Mot. at 8:8-10. Specifically, Evans' argues the ALJ should have found both of her hands severely impaired, by giving more weight to the part of the UCSF nerve conduction study that stated her carpal tunnel syndrome was bilateral, rather than the part of the study that stated her symptoms presented "right greater than left[.]" *Id.* The SSA argues the ALJ's finding that Evans only had a

---

[4]      In other words, if each impairment independently is not severe, but together they form a "severe" combination, the time test will be satisfied only if the overlapping period exceeds twelve months. 20 C.F.R. § 416.922(b).

1  severe impairment in her right hand was supported by substantial evidence and the law.  Cross-Mot.

2  at 4.  For the following reasons, the Court agrees with the SSA.

3  Title 20 C.F.R. § 416.927(b) states, "In deciding whether you are disabled, we will always

4  consider the medical opinions in your case record together with the rest of the relevant evidence we

5  receive."  20 C.F.R. § 416.927(b).  "Medical opinions are statements from physicians and

6  psychologists or other acceptable medical sources. . ."  *Id.* § 416.927(a)(2).  An "[a]cceptable

7  medical source. . . includes treating sources, nontreating sources, and nonexamining sources."  *Id.*

8  § 416.902 para. 1; *see Lester v. Chater*, 81 F.3d 821, 830, 830 n.7 (9th Cir. 1995).

9  A "treating source" means a physician, psychologist, or other acceptable medical source who

10  provides or has provided a claimant with medical treatment or evaluation and who has, or has had,

11  an ongoing treatment relationship with them.  20 C.F.R. § 416.902 para. 7.  In contrast, a

12  "nontreating source" means a physician, psychologist, or other acceptable medical source who has

13  examined a claimant, but does not have nor ever had an ongoing treatment relationship with them.

14  20 C.F.R. § 416.902 para. 6.

15  While an ALJ will consider all the evidence of record, including lay testimony, in evaluating

16  whether a claimant has severe impairment, subjective statements about symptoms or pain will not

17  alone establish disability.  20 C.F.R. §§ 416.913(d), 416.927(b), SSR 96-4p (symptoms); SSR 96-3p

18  (pain).  There must be medical signs showing that a claimant has a medical impairment which could

19  reasonably be expected to produce the symptoms alleged.  *Id.* § 416.927(b); 20 C.F.R. § 416.920(a);

20  SSR 85-28 para. 12.

21  In this case, the ALJ cited the June 2004 UCSF nerve conduction study, Dr. Umeh's 2003

22  examination, and Dr. Wechsler's 2004 examination as the medical signs showing Evans had a

23  medical impairment which could reasonably be expected to produce her symptoms.  AR at 20.  *See*

24  *Lester*, 81 F.3d at 830.  Each qualifies as acceptable nontreating medical source opinion.  20 C.F.R.

25  § 416.902 para. 6.  Under 20 C.F.R. § 416.929(c)(3), the ALJ also cited to Evans' SSA

26  questionnaires, her hearing testimony, and the third-party reports of her friends as lay opinion.  AR

27  at 20-21, 74, 77, 79-80, 83, 102, 108-09, 113, 123-125, 127, 147, 217.

28  In this case, substantial medical and lay evidence supports the ALJ's finding that Evans had

14

a degenerative wrist condition only in her right hand.  As to the medical evidence, in several Copper

Tower progress notes Evans' complained of hand pain only in her "right wrist[.]"  AR at 177-78.

Then, Dr. Umeh's 2003 examination noted full motor strength in the upper extremities, including

bilaterally.  AR at 20, 147.  In 2004, Dr. Wechsler found only possible evidence of mild, right ulnar

neuropathy.  AR at 217.  Finally, also in 2004, the UCSF study diagnosed Evans with "bilateral[,]

moderately severe, *right greater than left*, carpal tunnel syndrome."  AR at 219, 301-02 (emphasis

added).  The ALJ found, under 20 C.F.R. § 416.927(d)(3) and (d)(5), that the UCSF study, as the

most recent and specialized medical evidence, was the most cogent.  AR at 219, 301-02.  This

qualifies as substantial medical evidence supporting his finding that Evans only had a severe

impairment in her right hand, and not her left.

As to the lay evidence, substantial evidence also supports the ALJ finding that Evans only

had a severe impairment in her right hand, and not her left.  Evans complained subjectively of

bilateral hand pain to the SSA, and third-party reports support her complaints.  AR at 74, 77, 79-80,

83, 102, 108, 109, 113, 123-25.  But testimony from her SSA Questionnaires, and from her friends'

reports, is inconsistent with her hearing testimony, where she said her symptoms were mainly in her

right hand rather than both.  AR at 315.  This inconsistency calls into question Evans' credibility in

symptom reporting, and contradicts the medical evidence in the record.  Since an ALJ may only find

severe impairment where there is medical evidence in support, Evans' inconsistent lay testimony

and the testimony of her friends cannot support a severe bilateral hand impairment.  20 C.F.R.

§ 416.929.

Thus, because the medical reporting reasonably shows only a severe right-hand impairment,

and because Evans' and her friends' testimony is inconsistent and medically unsupported, the Court

finds that the ALJ had substantial evidence with which to find that Evans was severely impaired in

only her right hand, and not her left.  *Lester*, 81 F.3d at 830; 20 C.F.R. §§ 416.920(a), 416.927(b);

SSR 85-28 para. 12.  The Court AFFIRMS the ALJ's determination.

**II.     The ALJ committed legal error in determining Evans' Residual Functional Capacity.**

Evans raises three issues regarding the residual functional capacity ("RFC") the ALJ

determined.  Mot. at 3-8.  She argues: (1) the ALJ improperly discounted the credibility of her

15

symptom reporting; (2) improperly rejected the treating source opinion of Dr. Bean; and

(3) improperly determined her RFC. *Id.* For the reasons discussed below, the Court finds the ALJ

erred in determining Evans' RFC, where he: (1) failed to provide specific, clear, and convincing

reasons for finding Evans not credible; (2) where he failed to provide specific, clear and convincing

reasons for discounting the treating source opinion of Dr. Bean; and (3) thus failed to properly

determine Evans' RFC. As a result, the Court REVERSES the ALJ's decision, and REMANDS for

further findings and determinations consistent with this order.

### A.    Legal Standard

In assessing whether a claimant is disabled, the SSA determines his or her RFC and his or

her past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If he or she can still do his or her past

relevant work, the SSA will find he or she is not disabled. *Id.* The RFC determination precedes the

past relevant work determination. *Id.* § 416.945(a)(5). In this case, the ALJ performed these

determinations separately, first determining Evans' RFC.[5]

A clamant's RFC is the most they can still do despite their limitations. *Id.* § 416.945(a)(1).

The SSA assesses a claimant's RFC based on all the relevant evidence in their case record. *Id.*

§§ 416.920(e), 416.945(a)(1). The determination, however, turns solely on a claimant's medically

determinable impairments, whether severe or not. *Id.* § 416.945(a)(2); SSR 96-8p paras. 7, 17-18. It

does not turn on a claimant's age, body build, e.g., height or weight, or prior activities. SSR 96-8p

para. 1 ¶ 2, para. 7. While the claimant bears the burden of producing evidence for determining their

RFC, the SSA will make reasonable efforts to develop a complete medical history for the pertinent

twelve-month period, by contacting the claimant's providers or arranging for a consultative

examination, if necessary. 20 C.F.R. § 416.945(a)(3).

### B.    The ALJ's Findings

The ALJ found Evans had an RFC for a range of work at the light exertional level, with the

need for a sit/stand option every 20 minutes. AR at 22. He also found Evans was limited to simple,

repetitive tasks. *Id.* In making this finding, he said he "considered all symptoms and the extent to

---

[5]    The determination of Evans' past relevant work is discussed *infra* in note 6.

which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" *Id.* (*citing* 20 C.F.R. § 416.929, & SSRs 96-4p, -7p).  He also considered

///

opinion evidence in accordance with the requirements of 20 C.F.R. § 416.927 and SSRs 96-2p, -5p, and -6p.  *Id.*

The ALJ found Evans' medically determinable impairments could reasonably be expected to produce her alleged type of symptoms, but found her statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely credible.  AR at 22.  As reasoning, he said only that he "consider[ed] the evidence of record[.]"  *Id.*  The ALJ further found the treating source opinion of Dr. Bean, that marked psychiatric limitations preclude Evans' ability to work, not controlling based on "the evidence as a whole, and also because claimant worked in the past despite her history of childhood trauma, and substance abuse."  *Id.*  Conversely, he gave the opinions of Drs. Lampe, Wechsler, and Umeh great weight, but modified their recommendations to accommodate Evans' subjective complaints, and because they did not have access to the MRI and nerve conduction studies.  *Id.*  Finally, the ALJ found that no limitation on occasional contact with others was necessary, contrary to Dr. Bean's opinion.  AR at 22.  In reaching this finding, he gave greater weight to Dr. Lampe's opinion than to Dr. Bean's.  *Id.*

### C. The ALJ failed to provide specific findings regarding Evans' credibility.

Evans argues that the ALJ failed to provide specific, clear, and convincing reasons for determining that her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  Mot. at 3-6.  For the following reasons, the Court agrees. According to the SSA, "[a] symptom is an individual's own description of his or her physical or mental impairment(s)."  SSR 96-7p para. 4.  To admit symptom testimony, an ALJ uses a two-step process.  20 C.F.R. § 416.929(a); SSR 96-7p para. 4; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004).  First the claimant must identify one or more medically determinable impairments through objective medical evidence which could reasonably be expected to produce the alleged symptom.  20 C.F.R. § 416.929(a); SSR 96-7p para. 5; *Batson*, 359 F.3d at 1196.  In this case, Evans identified five severe impairments, and the ALJ found she could suffer

17

impairments reasonably expected to cause the symptoms of which she complained.  *See* AR at 19-22, 148-49, 162, 198, 217-18.

///

Turning to step two:

> "once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record."

SSR 96-7p para 5 sub-para. 2; *see* 20 C.F.R. § 416.929(a), (c); *see Batson*, 359 F.3d at 1196.  "The entire case record" includes medical opinions, the claimant's statements, *et seq*.  SSR 96-7p para 5. sub-para. 2.

"When additional information is needed to assess the credibility of the individual's statements about symptoms and their effects, the adjudicator must make every reasonable effort to obtain available information that could shed light on the credibility of the individual's statements." SSR 96-7p para. 6.  Additional information an ALJ will consider includes a claimant's daily activities; the location, duration, frequency, and intensity of their symptoms; precipitating and aggravating factors; the type, dosage, and effectiveness of any medications; treatment other than medication; measures to relieve symptoms, e.g., lying flat on one's back; *et seq*.  20 C.F.R. § 416.929(c)(3); SSR 96-7p para. 6.

If an ALJ determines a claimant's statements are not credible, he or she must provide "specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  SSR

96-7p para. 2 ¶ 5.  The Ninth Circuit requires "specific, cogent reasons" for an adverse credibility finding.  *Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*citing Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996)).  In short, the ALJ must "specifically identify what testimony is credible and what testimony undermines the claimant's complaints[.]"  *Greger*, 464 F.3d at 972 (*quoting Morgan v. Comm'r of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999)); *Carmickle*, 533 F.3d at 1160 (*citing Greger*).  The ALJ need not do this if there is affirmative evidence of malingering.  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (*citing Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Greger*, 464 F.3d at 972.

Evans testified she is in constant pain due to her back and hand condition, and that she cannot sit or stand for more than 15 minutes at a time.  AR at 33, 103.  She also stated her lifting ability is significantly limited to between five and ten pounds, and only on occasion.  AR at 316.  The ALJ found Evans could suffer impairments reasonably expected to cause these symptoms, and this is reflected in the determination of her RFC.  But, he also found her statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible.  AR at 22.  In his findings, however, the ALJ cited no parts of Evans' testimony he believed, and he proffered no specific reasons for discrediting her testimony.  AR at 22 , heading 4, para. 2.  He said only:

> "After considering the evidence of record, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged type of symptoms, but that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms cannot be found entirely credible."

AR at 22, heading 4, para. 2.  Evans' argues, "that was the epitome of a generalized, non-specific finding contrary to the requirements for specificity[.]"  Mot. at 5:1-2.

In opposition, the SSA concedes the point, Cross-Mot. at 5:10-11, but urges the Court to draw inferences from other parts of the ALJ's decision on his behalf, *id.* at 5:1-5.  The SSA asserts that the ALJ properly found Evans not credible because there was conflicting opinion evidence as to the intensity, persistence, and limiting effects of these symptoms.  Cross-Mot. at 5:12-23.

As Evans correctly points out in her Reply however, this Court is constrained to the specific

reasons the ALJ asserted in his decision.  Reply. at 3:3-12; *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003).  With no affirmative evidence of malingering cited by the ALJ, nor any found by the Court reviewing the record as a whole, the clear-and-convincing standard applies.  *Lingenfelter*, 504 F.3d at 1036.  The ALJ could only discredit Evans' testimony by providing specific, clear and convincing reasons supported by substantial evidence.  *Carmickle*, 533 F.3d at 1160.  Because the ALJ did not provide such reasons, the Court REVERSES his decision and REMANDS this matter for a proper determination.

**D.**     **The ALJ failed to provide specific findings germane to each lay witness whose testimony he did not consider.**

Evans argues that the ALJ improperly rejected lay witness testimony in evaluating the intensity, persistence, and limiting effects of her symptoms.  Mot. at 5:6-6:3.  She alleges the ALJ's failure to consider this lay witness testimony constituted reversible error. Mot. at 5:6-7.  The SSA argues that the ALJ either did not have to address lay witness testimony at all, or his failure to do so was harmless error.  Cross-Mot. at 7:3-8:11.  For the following reasons, the Court finds that the ALJ improperly failed to consider the lay witness testimony relating to the intensity, persistence, and limiting effects of Evans' symptoms.

**1.**     **Legal standard**

An ALJ may consider evidence from a claimant's friends or relatives to show the severity of impairments at issue and how the claimant's ability to work has been affected.  20 C.F.R. § 416.927(e)(1).  Further, the Ninth Circuit has held friends and family members are in a position to observe a claimant's symptoms and daily activities, and are competent to testify as to his or her condition, regardless of the credibility of the claimant.  *Dodril v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (*citing Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)).  Disregard of lay witness testimony evidence violates the rule of completeness in 20 C.F.R. § 404.1513(e)(2).  *Dodril*, 12 F.3d at 919.  An ALJ, however, is not bound by the determination of lay witness testimony, just as he or she is not bound by one source opinion alone.  20 C.F.R. § 416.927(e)(1); *Batson*, 359 F.3d at 1195.

If an ALJ disregards lay witness testimony which goes only to the existence of a medically determinable impairment which could reasonably be expected to produce alleged symptoms, the

harmless error test is applied. *Robbins v. Comm'r of Soc. Sec. Admin.*, 466 F.3d 880, at 885 (9th Cir. 2006). If, however, an ALJ rejects lay witness testimony going to the intensity, persistence, and limiting effects of a claimant's medically supported symptoms, without giving a reason germane to that witness, then the ALJ commits reversible error. *Dodril*, 12 F.3d at 919 (emphasis added); *Parra v. Astrue*, 481 F.3d 742, at 750 (9th Cir. 2007); *Robbins*, 466 F.3d 885.

The SSA cites several cases which allegedly support the conclusion that an ALJ's non-discussion of lay witness testimony is harmless error, not requiring reversal and remand. Cross-Mot. at 7-8, part B (*citing Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984); *Ukolov v. Barnhart*, 420 F.3d 1002, 1006 n.6 (9th Cir. 2005); *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 153-56 (9th Cir. 2006)). However, these cases do not apply to this matter. In *Vincent* and *Ukolov*, the ALJs dismissed contrary lay witness testimony where *there was no objective medical evidence* as to the claimant's disability. Here, there is objective medical evidence. *Stout* is distinguishable as dealing with medically *uncontradicted* lay witness testimony. Here, Evans' friends' testimony contradicts objective medical evidence as to the intensity, persistence, and limiting effects of her symptoms, and as such may properly be rejected only with specific, germane reasoning. *Dodril*, 12 F.3d at 919.

### 2. Analysis

Evans' offered two third-party reports from friends as to the intensity, persistence, and limiting effects of her symptoms. AR at 67-74, 122-30. An April 2004 report stated that Evans can only do limited household work because of extreme pain in her back and hands, and that Evans has difficulty holding a job. AR at 67-74. A May 2004 report stated that Evans' hands sometimes hurt to such an extent she cannot drive or write. AR at 122-30. Both reports stated Evans does light housework, takes care of her daughter, and tries to spend time outdoors each day. AR at 67-74, 122-30.

Though the ALJ listed these reports and their contents in step two of his disability analysis, AR at 21, in step four he did not explain how each third-party report factored into his credibility finding, AR at 22. The ALJ states only that he could not find the intensity, persistence, and limiting effects of Evans' symptoms entirely credible. *Id.* This lay testimony may be discounted by the ALJ,

but not without germane reasoning.  *Dodril*, 12 F.3d at 919.  The Court therefore REVERSES the ALJ's decision and REMANDS this matter for the ALJ to provide reasoning germane to each discounted lay witness.

> **E.**      **The ALJ erred in discounting the treating source opinion of Dr. Bean, and in crediting the examining opinion of Dr. Lampe, without specific reasons.**

Evans argues the ALJ improperly discounted the treating source opinion of Dr. Bean in favor of the examining opinion of Dr. Lampe, without providing specific, legitimate reasons supported by substantial evidence.  Mot. at 6.  The SSA argues the ALJ provided two specific reasons for reaching his findings, each of which was supported by substantial evidence and the law.  Cross-Mot. at 8.  Evans' contention has merit and constitutes an independent ground requiring REVERSAL of the ALJ's RFC determination and REMAND of this matter for its redetermination.

An ALJ will always consider medical opinions together with the rest of the relevant evidence in deciding whether a claimant is disabled.  20 C.F.R. § 416.927(b).  Acceptable medical sources include treating sources, nontreating sources, and nonexamining sources.  *Id.* § 416.902 para. 1; *see Lester*, 81 F.3d at 830, n.7.  A "treating source" refers to a physician, psychologist, or other acceptable medical source who provides or has provided a claimant with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with them.  20 C.F.R. § 416.902 para. 7.  An "ongoing relationship" has "a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [their] medical condition(s)."  *Id.*  A physician who supervises a team of persons who together have an "ongoing relationship" with a claimant, qualifies as a "treating physician."  *Benton v. Barnhart*, 331 F.3d 1030, 1037-39 (9th Cir. 2003).

In contrast, a "nontreating source" refers to a physician, psychologist, or other acceptable medical source who has examined a claimant, but does not have nor ever had an ongoing treatment relationship with them.  20 C.F.R. § 416.902 para. 6.  This includes any acceptable medical source with whom the claimant's only relationship is or was not based on their need for treatment or evaluation but only for obtaining a report to support a disability claim.  *Id.*  A "nonexamining source" means a physician, psychologist, or other acceptable medical source who has not examined

a claimant, but who provides a medical or other opinion in their case.  *Id.* para. 5.

Under 20 C.F.R. § 416.902, Evans' health care providers fall into two categories.  Evans had several ongoing visits with Dr. Bean and Barrie Ann Mason, M.A. M.F.T., therefore they qualify as treating sources.  In contrast, Drs. Venard and Lampe each only saw Evans once, in November 2003 and July 2004, respectively, both at the SSA's request.  AR at 20-21, 158, 237.  These mental health evaluators had no ongoing relationship with Evans, and their opinions were used as evidence solely for the SSA's determination of Evans' disability.  They were non-treating sources.

Regardless of its source, the SSA evaluates every medical opinion received.  *Id.* § 416.927(d).  If a *treating* source opinion meets certain criteria, the SSA will give it controlling weight.  *Id.* § 416.927(d)(2).  Certain decisions, however, such as determining a claimant's RFC, are reserved to the SSA only, and may not be controlled by any acceptable medical source.  *Id.* § 416.927(e)(2); SSR 96-5p paras. 6, 8; *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  Though an ALJ may give a treating source opinion less than controlling weight when inconsistent with other medical evidence, 20 C.F.R. § 416.927(d)(2), the ALJ *must always give good reasons* in his decision for the weight given a treating source opinion, *id.*

If the ALJ chooses to disregard a treating physician's medical opinion, he or she must set forth specific, legitimate reasons for doing so, and this decision must itself be based on substantial evidence.  *Cotton*, 799 F.2d at 1408 (*citing Jones v. Heckler*, 760 F.2d 993, 995, 997 (9th Cir. 1985)).  The ALJ may meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his or her interpretation thereof, and making findings.  *Cotton*, 799 F.2d at 1408 (*citing Swanson v. Sec'y*, 763 F.2d 1061, 1065 (9th Cir. 1985)).

## 2.      Analysis

Dr. Bean opined, "because of a chaotic, abusive childhood and because of years of substance abuse, Phyllis Evans has emotional instability and cognitive impairment that would make it very difficult for her to function in a job situation."  AR at 162.  In contrast, Drs. Venard and Lampe found Evans only mildly limited in her ability to function.  AR 20-21, 158, 237.  Even though Dr. Bean was a treating source, his opinion was not controlling on the ALJ's determination of Evans' RFC.  AR at 22.  Nonetheless, while the ALJ was free to discount Dr. Bean's treating source

1  opinion, he gave no reasons supporting his decision other than basing it on "the evidence as a

2  whole[,]" and citing Evans' "work[] in the past despite her history of childhood trauma and

3  substance abuse."  AR at 22.

4       The ALJ's failure to provide specific reasoning for his weighing of medical opinion

5  constitutes reversible error.  *See Cotton*, 799 F.2d at 1408.  Dr. Bean's opinion that Evans suffered

6  from recurrent major depressive disorder was consistent with other medical opinions in the record.

7  Dr. Venard testified Evans suffered from recurrent major depressive disorder.  AR at 20, 159.  And,

8  Dr. Lampe testified Evans suffered from recurrent major depressive disorder.  AR 21, 237.  But

9  Dr. Bean's opinion indicates the *limiting effects* of Evans' depression is more severe than that

10  indicated by Drs. Venard or Lampe.  *Id.*  The ALJ, however, discounted Dr. Bean's treating source

11  opinion, allegedly because it was inconsistent with the rest of the medical evidence as to severity,

12  but failed to provide specific, legitimate reasons in his decision for doing so.  *Cotton*, 799 F.2d at

13  1408.  As a result, the Court REVERSES the ALJ's decision and REMANDS this matter for the

14  ALJ to provide findings consistent with this Order.[6]

15  **III.    The Court remands for further development of the Administrative Record.**

16       Evans requests the Court to remand for an immediate determination of benefits, under

17  *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).  Mot. at 10:15-16.  The SSA opposes.

18  Cross-Mot. at 13 n.7.  Because this Court is remanding for a redetermination of Evans' RFC, the

19  Court denies Evans' request to remand for immediate award of benefits.

20  **CONCLUSION**

21       Accordingly, the Court GRANTS in part and DENIES in part plaintiff Phyllis D. Evans'

22  Motion for Summary Judgment and/or Remand [Docket No. 13], GRANTS in part and DENIES in

23  part defendant Commissioner of the Social Security Administration's Notice, Motion and

24  Memorandum in Support of Cross-Motion for Summary Judgment and In Opposition to Plaintiff's

25  _____

26  [6]    In her administrative hearing, after determining her RFC, the ALJ determined Evans could
not perform her past relevant work, *see* 20 C.F.R. § 416.945(a)(5); AR at 23, but he then determined

27  she could perform some other work, *see* 20 C.F.R. § 416.920(e); AR at 23-24, finding her not
disabled.  As the Court is remanding for a redetermination of her RFC, the Court need not address

28  whether to remand for a redetermination of these subsequent determinations.  On remand, defendant
shall make this decision after redetermining Evans' RFC.

Motion for Summary Judgment [Docket No. 16], REVERSES defendant's decision regarding

whether Evans is eligible for supplemental security income benefits, and REMANDS this matter

///

back to defendant for further findings and a redetermination of her residual functional capacity, in

accordance with the Court's findings and conclusions stated herein.


      IT IS SO ORDERED.

      September 30, 2008              _Saundra B Armstrong_

                                       Saundra Brown Armstrong
                                       United States District Judge